IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM ANTHONY ELDRIDGE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| OFFICER MATTHEW DIEHL, CITY OF ALLENTOWN, SGT. JOHN HILL, OFFICER PATRICK BULL, and JOHN DOE, | : | NO. 10-3537 |
| | : | |
| Defendants. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                                                             February 1, 2011

Currently pending before the Court are: (1) Defendants Officer Matthew Diehl, the City of Allentown, Sergeant John Hill, and Officer Patrick Bull's (collectively "Defendants") Motion to Dismiss Plaintiff William Anthony Eldridge's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6); and (2) Plaintiff's Motion to Amend the Complaint. For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part, and Plaintiff's Motion to Amend is granted.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff alleges that on November 5, 2008, Defendants Diehl and Hill, along with Officers David Howells and April Kummerer, were conducting a drug interdiction on the 100 block of North 8th St. in Allentown, Pennsylvania. (Compl. ¶ 1.) According to Plaintiff, he and two acquaintances were walking eastbound on Chestnut Street when two police vehicles approached them. (Id. ¶¶ 13-16.) One patrol car, which Plaintiff believes was driven by

Defendant Hill, pulled ahead and blocked the path of Plaintiff and his companions. (Id. ¶¶ 16-17.) Defendant Diehl then arrived on the scene and told the three individuals to get on the wall. (Id. ¶ 18.) While Plaintiff was standing against the wall, he allegedly heard Defendant Diehl say on his radio, "he is not the dealer, he is not the dealer, secure the block and check ID's." (Id. ¶ 19.) Upon hearing Defendant Diehl say, "he is not the dealer," Plaintiff moved away from the wall. (Id. ¶ 20.) Defendant Diehl then attempted to search Plaintiff, but Plaintiff moved out of his reach. (Id. ¶ 21.)

At this point, Plaintiff alleges that Defendant Diehl threatened to unleash the police K-9, and Plaintiff ran from the scene. (Id. ¶¶ 22, 24.) Defendant Hill then grabbed Plaintiff by the back of his vest, threw him face-first to the ground, and handcuffed him. (Id. ¶¶ 25-26.) While he was on the ground, Plaintiff alleges that Defendant Diehl came over and began to punch and kick him in the face in excess of fifteen times. (Id. ¶ 27.) During this assault, Defendant Diehl, who is white, allegedly made racially insensitive remarks to Plaintiff, who is African American. According to Plaintiff, Defendant Diehl said to him "you and your home boys don't own these streets," and, in a mocking reference to the recent presidential election, "so Obama won?" (Id. ¶ 29.)

Plaintiff was then taken to the Allentown Police headquarters and placed in a holding cell. (Id. ¶ 30.) He asked Defendant Diehl to take him to the hospital, but his requests were ignored. (Id. ¶ 31.) Thereafter, Plaintiff fell asleep, and when he awoke Defendant Bull was on duty. (Id. ¶ 52.) He reiterated his request to be taken to the hospital when he saw Defendant Bull, and Defendant Bull arranged for the EMS to examine Plaintiff in his cell. (Id.) When Defendant John Doe from the Allentown EMS arrived, Plaintiff once again asked to be taken to

the hospital, but Defendant Doe refused after concluding that Plaintiff's injuries were non-life-threatening. (Id. ¶ 55.) Defendant Bull then asked Plaintiff to sign a form indicating that he had been examined by paramedics, (id. ¶ 57), but Plaintiff alleges that after he signed it, Defendant Bull "added extra information without my knowledge indicating that I stated I just wanted to be documented. Furthermore, I learned that what Officer Bull had presented to me as a form indicating that I had been examined by the EMS was actually a patient refusal of services form." (Id. ¶ 61.) In addition, Plaintiff claims that Defendant Doe, at the direction of Defendant Bull, falsified information in his medical evaluation about Plaintiff's request for additional treatment. (Id. ¶¶ 63-64.)

Plaintiff filed his Complaint in this Court on August 24, 2010. He asserts that Defendants Diehl and Hill stopped him without reasonable suspicion, subjected him to excessive force during the course of his arrest, and conspired to fabricate evidence in their arrest reports. (Id. ¶¶ 10-11, 32.) He also claims that Defendants Bull and Doe conspired to conceal evidence of the severity of the injuries inflicted by Defendants Diehl and Hill. (Id. ¶ 51.) Plaintiff further alleges that the City of Allentown and the officials charged with training the Allentown Police on how to use force when apprehending a suspect have demonstrated deliberate indifference to the welfare of Plaintiff and other black citizens. (Id. ¶ 67.) He accuses the City of Allentown of promoting the Allentown police force's "practice, policy and custom of routinely forcibly stopping blacks without reasonable suspicion of criminal activity . . . , of using threats of physical violence or actual physical assault to compel black residents to answer questions, and consent to searches." (Id. ¶ 68.) Finally, Plaintiff states that "Defendants violated my federally protected right against unlaw[ful] search and seizure pursuant to the 4th Amendment to the United States

Constitution, the 5th, and 14th Amendments rights to Due Process . . . ." (Id. ¶ 69.) In addition to monetary damages to compensate him for the harm he suffered, Plaintiff requests that this Court mandate "that audio & video surveillance cameras be placed in all Allentown patrol vehicles, and that they are mandatorily turned on, whenever any stop of a citizen occurs." (Id. at 1.)

Defendants filed the present Motion to Dismiss on October 25, 2010. Plaintiff filed a Response in Opposition on November 19, 2010, which included a Motion to Amend the Complaint.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. It emphasized that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In the subsequent case of Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937 (2009), the Supreme Court enunciated two fundamental principles applicable to a court's review of a motion to dismiss for failure to state a claim. First, it noted that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Thus, although "[Federal] Rule [of Civil Procedure] 8

marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950. Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Notwithstanding the foregoing, nothing in Twombly or Iqbal has altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review. Arner v. PGT Trucking, Inc., No. CIV.A.09-0565, 2010 WL 1052953, at *2 (W.D. Pa. Mar. 22, 2010); Spence v. Brownsville Area Sch. Dist., No. CIV.A.08-0626, 2008 WL 2779079, at *2 (W.D. Pa. Jul. 15, 2008). Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. FED. R. CIV. P. 8; Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Defendants' Motion requests dismissal of the following: (1) the illegal search and seizure claim; (2) the claim that Defendants conspired to conceal the severity of Plaintiff's injuries; (3) all claims alleging that the City of Allentown has a policy or custom of racial discrimination; (4)

5

Plaintiff's request for injunctive relief; (5) all claims against Defendants in their official capacity; and (6) the Fifth and Fourteenth Amendment Due Process claims. (Defs.' Mot. Dismiss ¶ 3.) In his Response in Opposition, Plaintiff has included a Motion to Amend the Complaint to alter certain claims and join a new party. (Pl.'s Resp. Opp'n at 18-19.) The Court considers each Motion in turn.

   A.   **Defendants' Motion to Dismiss**

        1.   **Plaintiff's Fourth Amendment Claim for Illegal Search and Seizure**

Pursuant to the rule announced in Younger v. Harris, 401 U.S. 37 (1971), "[a] federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005) (citing Younger, 401 U.S. 37 (1971)). Younger abstention is appropriate when the following criteria are satisfied: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." Kendall v. Russell, 572 F.3d 126, 131 (3d Cir. 2009) (citing Matusow v. Trans-Cnty. Title Agency, LLC, 545 F.3d 241, 248 (3d Cir. 2008)). A court may not abstain when: "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist, such as proceedings pursuant to a flagrantly unconstitutional statute, such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." Schall v. Joyce, 885 F.2d 101, 106 (3d Cir. 1989) (citing Middlesex Cnty. Ethics Comm. v. Garden State Bar Assoc., 457 U.S. 423, 435 (1982)).

6

Here, Defendants contend that the Court should abstain from hearing Plaintiff's Fourth Amendment claim for illegal search and seizure. (Defs.' Mot. Dismiss at 6-8.) They argue that this issue is currently being litigated as part of a criminal prosecution against Plaintiff in the Lehigh County Court of Common Pleas, that these "charges implicate the important state interest of protecting the state's citizens from crime," and that Plaintiff can raise his Fourth Amendment rights as an affirmative defense to the charges against him. (Id.) Plaintiff does not contest the argument that these facts satisfy the criteria for abstaining under Younger. Rather, he contends that there are no grounds for the Court to abstain from hearing his Fourth Amendment claim for excessive force. (Pl.'s Resp. Opp'n at 18.) Defendants, however, have not moved to dismiss the excessive force claim. Because the Court agrees that hearing the search and seizure claim would interfere with an ongoing criminal proceeding in Pennsylvania state court, abstention is proper. Plaintiff's claim for illegal search and seizure is therefore dismissed.

### 2. Plaintiff's Claim that Defendants Conspired to Conceal the Severity of His Injuries

In Pennsylvania, a civil conspiracy claim must allege: "'(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage.'" Berger v. Zeghibe, No. CIV.A.08-5861, 2010 WL 4054274, at *4 (E.D. Pa. Oct. 14, 2010) (quoting Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008)). In order to state a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must further demonstrate: "(1) the existence of a conspiracy involving state action; and (2) a depravation [sic] of civil rights in furtherance of the conspiracy by a party to the conspiracy."

Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000) (citations omitted).

Defendants argue that the Complaint alleges a conspiracy among Defendants Bull, Diehl, and Hill to conceal the severity of the injuries Plaintiff suffered when he was assaulted during the course of his arrest. (Defs.' Mot. Dismiss at 8-10.) They contend that this claim should be dismissed because Plaintiff has not identified sufficient facts to establish a conspiracy. (Id. at 8.) After reviewing the Complaint, however, it appears that Defendants have misinterpreted Plaintiff's allegations. The Complaint states that "Officer Bull and City of Allentown EMS #08011984 John Doe conspired together to conceal the severity of the physical injuries which I sustained as a result of the assault inflicted on me by Officer Diehl and Sgt. Hill." (Compl. ¶ 51.) It seems clear that Plaintiff is alleging a conspiracy between Defendants Bull and Doe, not among Defendants Bull, Diehl, and Hill. Accordingly, the Court examines the Complaint to determine whether Plaintiff has pleaded sufficient facts to sustain this claim.

Plaintiff contends that Defendant Bull (a state actor) and Defendant Doe conspired to deprive him of a legal right, namely, access to proper medical care.[1] He alleges that they acted in furtherance of this conspiracy when they fabricated information on his medical evaluation and patient refusal of services form, and that he suffered damages when they ignored the severity of his injuries. Viewing these allegations in the light most favorable to Plaintiff, the Court finds that he has stated a claim for conspiracy. Defendants' Motion to Dismiss this claim is denied.

---

[1] Although Plaintiff does not indicate the constitutional basis for his deprivation of medical care claim, the Supreme Court has held "that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

8

### 3. Plaintiff's Claim against the City of Allentown for Promoting a Policy of Racial Discrimination

A governing body may be liable for a violation of 42 U.S.C. § 1983 when the execution of a "policy or custom, whether made by its lawmakers or by those whose edicts or actions may fairly be said to represent official policy, inflicts the injury . . . ." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). This is true "even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 691.

The existence of a policy or custom may be demonstrated in either of two ways. First, a policy exists when the "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issued an official statement of policy." Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Second, "a course of conduct constitutes a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' that they operate as law." Id. (quoting Monell, 436 U.S. at 690).

Here, Plaintiff alleges that the City of Allentown and the officials responsible for training the police force have shown deliberate "indifference to the safety and welfare of the Plaintiff and other black residents and visitors to the City of Allentown." (Compl. ¶ 67.) Plaintiff further alleges that the city officials who supervise the Allentown Police Department "turn a blind eye to and promote the Allentown Police's practice, policy and custom of routinely forcibly stopping blacks without reasonable suspicion of criminal activity or probable cause, of using threats of physical violence or actual physical assault to compel black residents to answer questions, and consent to searches." (Id. ¶ 68.)

Defendants argue that this claim should be dismissed because Plaintiff has failed to plead any facts to support the allegation that the City of Allentown has a policy or custom of racial discrimination. (Defs.' Mot. Dismiss at 10-11.) The Court agrees that the Complaint, as pleaded, does not establish that the alleged violations of Plaintiff's rights were part of a well-settled practice. Nor is there any factual allegation that such violations were approved – either explicitly or implicitly – by the City of Allentown or its officials. Rather, Plaintiff seems to have concluded that because his rights were violated by members of the Allentown Police Department, the people responsible for overseeing those members must have sanctioned their behavior.

Although these deficiencies provide the Court with sufficient grounds to dismiss the claims against the City of Allentown, Plaintiff's Response in Opposition includes a Motion to Amend his Complaint with respect to these claims. (Pl.'s Resp. Opp'n at 19.) Plaintiff intends to add information about his own prior encounters with the Allentown Police Department, as well as the experience of another man, Tavis Williams, that may demonstrate the existence of a custom or policy of discrimination against African Americans. (Id. ¶¶ 49-51.) Plaintiff's claims against the City of Allentown are therefore dismissed, but the Court grants Plaintiff leave to amend his Complaint to reassert these claims with substantive allegations in support.[2]

### 4. Plaintiff's Standing to Sue for Injunctive Relief

When assessing whether a plaintiff has standing to seek relief, "the relevant inquiry is whether . . . the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 38 (1976). In

---

[2] Section III.B of this Memorandum contains a more detailed discussion of Plaintiff's request to amend his Complaint.

making this determination, "the form of relief sought is often critical," and there may be instances when a plaintiff has "standing to sue for damages yet lack standing to seek injunctive relief." Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987) (citations omitted). Thus, "[w]hile a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . .'" Id. (quoting O'Shea v. Littleton, 414 U.S. 488, 495 (1974)). Rather, "the plaintiff must 'establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice.]'" Id. (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)).

In the present case, Plaintiff requests "that audio & surveillance cameras be placed in all Allentown patrol vehicles, and that they are mandatorily turned on, whenever any stop of a citizen occurs." (Compl. at 1.) Defendants argue that this request for injunctive relief should be dismissed because Plaintiff cannot establish a likelihood of future similar harm, he cannot demonstrate that irreparable injury would occur if no injunction was issued, and he has an adequate remedy at law for damages pursuant to § 1983. (Defs.' Mot. Dismiss at 12-13.)

The Court finds no evidence of a real and immediate threat that Plaintiff will again be subjected to unconstitutional practices. The Complaint merely describes alleged harm to which Plaintiff was subjected in the past. Furthermore, even if Plaintiff could show a potential for future harm, the form of relief he seeks would do nothing to redress his alleged injuries. Plaintiff claims that Defendants Diehl and Hill stopped him without reasonable suspicion and used excessive force during the course of his arrest. He believes that this unlawful conduct could be prevented in the future if the Allentown police were required to use audio/visual equipment when

stopping a citizen. The Court disagrees. While the relief sought by Plaintiff could potentially assist future litigants in gathering evidence of unlawful conduct, it would not directly prevent the conduct itself from occurring. Defendants' Motion to Dismiss Plaintiff's request for injunctive relief is granted.

### 5. Plaintiff's Claims Against Defendants in Their Official Capacities

A lawsuit brought against a government official in his or her official capacity constitutes "'another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (quoting Monell, 436 U.S. at 690 n.55). Thus, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id. at 166 (citation omitted). It therefore follows that "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." Id.

Here, the Defendants named in the Complaint are Diehl, Hill, Bull, Doe, and the City of Allentown. The Complaint states that Defendants Diehl and Hill "were acting at all relevant times under color of state law as employees of the Allentown Police Department. I am suing them in both their individual and official capacities." (Compl. ¶ 3.) Plaintiff does not indicate whether Defendants Bull and Doe are being sued in their individual or official capacities. Furthermore, the Complaint is vague as to which parties are being sued for each claim.[3] Defendants Diehl, Hill, and Bull have moved for dismissal of Plaintiff's claims against them in

---

[3] For example, the Complaint states that Defendants Diehl and Hill stopped Plaintiff without reasonable suspicion, subjected him to excessive force, and fabricated information in their arrest reports. (Compl. ¶¶ 10-11.) It is not clear whether these claims are being made solely against Defendants Diehl and Hill or against the City of Allentown as well.

their official capacities, as they are duplicative of the claims against the City of Allentown. (Defs.' Mot. Dismiss at 13-14.) To the extent that Plaintiff is suing both the City of Allentown and Defendants in their official capacities for the same claims, Defendants' Motion is granted, and the claims against Defendants in their official capacities are dismissed.

### 6. Plaintiff's Fifth and Fourteenth Amendment Claims

Plaintiff alleges that "Defendants violated my federally protected right against unlaw[ful] search and seizure pursuant to the 4th Amendment to the United States Constitution, the 5th, and 14th Amendments rights to Due Process . . . ." (Compl. ¶ 69.) Defendants move to dismiss the Fifth Amendment claim because Plaintiff has not alleged any action by the federal government in this case. (Defs.' Mot. Dismiss at 14.) See Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983) (citing Pub. Util. Comm'n v. Pollak, 343 U.S. 451, 461 (1952)) ("The limitations of the fifth amendment restrict only federal governmental action."). Defendants also move to dismiss Plaintiff's Fourteenth Amendment claim, arguing that it "is nothing more than an allegation of an unreasonable search and excessive force," which is duplicative of Plaintiff's Fourth Amendment claim. (Defs.' Mot. Dismiss at 14-15.) The Court agrees on both points, and Plaintiff's Fifth and Fourteenth Amendment Due Process claims are dismissed.

### B. Plaintiff's Motion to Amend

At the end of his Response in Opposition, Plaintiff includes a Motion to Amend his Complaint. (Pl.'s Resp. Opp'n at 18-19.) In doing so, he reiterates his claim of excessive force against Defendants Diehl and Hill, his claims against the City of Allentown and its officials for failure to properly train the members of the Allentown Police Department and for promoting a policy of racial discrimination, and his claims against Defendants Bull and Doe for depriving him

of proper medical care. (Id.) In addition, he seeks to join Officer April Kummerer as a defendant, alleging that she failed to intervene when Defendant Diehl subjected him to excessive force. (Id. at 8.)

The Court finds that Plaintiff may amend his Complaint as follows. First, since neither his excessive force claim nor his claim that Defendants Bull and Doe conspired to deprive him of medical care are being dismissed, they may be included in an amended complaint. Next, Plaintiff may amend the Complaint to include claims against the City of Allentown for promoting a policy of discrimination against African Americans, so long as he includes at least some factual allegation that provides a basis for these claims.[4] Finally, Plaintiff may amend the Complaint to join Officer April Kummerer as a defendant in this case.

IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint is granted with respect to the Fourth Amendment claim for illegal search and seizure, the claims alleging that the City of Allentown failed to properly train its police force and has a policy or custom of racial discrimination, Plaintiff's request for injunctive relief, all claims against Defendants in their official capacities, and the Fifth and Fourteenth Amendment Due Process claims. The Motion is denied with respect to the claim that Defendants conspired to deprive Plaintiff of proper medical care. Plaintiff's Motion to Amend the Complaint to assert a more factually specific claim that the City of Allentown has a policy of racial discrimination and to join Officer April Kummerer as a defendant is granted.

---

[4] See section III.A.3 of this Memorandum.